IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 11-cv-03191-WYD-BNB

TIMOTHY DEMITRI BROWN,

Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,
UNITED STATES DEPARTMENT OF JUSTICE,
UNITED STATES OF AMERICA, and
JOHN AND JANE DOES 1-20,

Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on the following cross motions for summary judgment:

(1)   The defendants' **Motion for Summary Judgment** [Doc. #76, filed 08/14/2013]

("Defendants' Motion"); and

(2)   **Plaintiff's Motion for Summary Judgment** [Doc. #79, filed 08/16/2013]

("Plaintiff's Motion").

I respectfully RECOMMEND that Defendants' Motion be GRANTED IN PART and

DENIED IN PART and that Plaintiff's Motion be DENIED.

**I.   STANDARD OF REVIEW**

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings.  Haines v.

Kerner, 404 U.S. 519, 520-21 (1972).  I cannot act as advocate for a *pro se* litigant, however,

who must comply with the fundamental requirements of the Federal Rules of Civil Procedure.

Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence.  Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970).  Summary judgment shall be rendered "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, discovery and disclosure materials on file, and any affidavits, the absence of genuine issues of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."  Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002).

The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial.  Celotex, 477 U.S. at 324.  Only admissible evidence may be considered when ruling on a motion for summary judgment.  World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

## II.  BACKGROUND

The plaintiff is currently incarcerated by the Federal Bureau of Prisons ("BOP") at the

United States Penitentiary, Administrative Maximum Facility in Florence, Colorado ("ADX").

He filed his Prisoner Complaint [Doc. #3] (the "Complaint") on December 8, 2011.[1]

The Complaint contains numerous allegations but lacks specific facts and does not state

the causes of action with clarity.  The Complaint asserts seven claims, most of which contain

sub-claims.  On January 4, 2013, many of the claims were dismissed [Doc. #51].  I previously

characterized the remaining claims as follows:

> 1.  Claim One insofar as it alleges that (a) the plaintiff's placement
> in unwarranted psychological treatment in the SMU constitutes a
> state tort, and (b) the SMU program was implemented in violation
> of the Administrative Procedure Act ("APA");
>
> 2.  Claim Three against the BOP for denying the plaintiff's
> requests for information in violation of the Freedom of Information
> Act ("FOIA"); and
>
> 3.  Claim Four's allegations that certain exemptions to the Privacy
> Act are unconstitutionally vague.

*Recommendation of United States Judge* [Doc. #47], pp. 10, 24.[2]

---

[1]The plaintiff filed a handwritten Complaint on the court's form [Doc. #1] and a
typewritten Complaint that is not on the court's form [Doc. #3].  The Complaints are identical in
substance.  I refer here to the typewritten Complaint.

[2]I also stated that "[a]ny other claims the plaintiff may be attempting to assert are
unintelligible and will not be recognized.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.
1991) (stating that '[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff
of the burden of alleging sufficient facts on which a recognized legal claim could be based')."
*Recommendation of United States Judge* [Doc. #47], p. 9, n. 5.  To the extent the plaintiff is
attempting to assert other claims in his briefs, I will not consider claims asserted for the first time
in briefs supporting or opposing dispositive motions.

## III.   UNDISPUTED MATERIAL FACTS[3]

### A.   Claim One

1.   The plaintiff was incarcerated at the Federal Correctional Complex-Tucson ("FCC Tucson") from April 13, 2007, to March 11, 2009.  *Defendants' Motion*, Ex. 1, ¶ 10 and Attachment 2, p. 1.

2.   After conducting a hearing, a Discipline Hearing Officer ("DHO") found that on July 18, 2008, the plaintiff violated (1) Code 104, Possession, Manufacture, or Introduction of a Weapon; (2) Code 201, Fighting with Another Person; and (3) Code 224, Assaulting any Person. Id. at Ex. 1, ¶ 11 and Attachment 3.

3.   BOP Program Statement 5217.01, *Special Management Units*, outlines the procedures for referring an inmate to a Special Management Unit ("SMU") and governs the operations of SMUs within the BOP.  Id. at Ex. 1, ¶ 4 and Attachment 1, pp. 1-4.

4.   On December 1, 2008, the Acting Unit Manager for the plaintiff recommended that he be designated to the SMU Program because of his serious and/or disruptive disciplinary history.  Id. at Ex. 1, ¶ 12 and Attachment 3, BOP00344.  The Acting Unit Manager cited the discipline that the plaintiff had received for the July 18, 2008, incident as well as other incidents of misconduct by the plaintiff.  Id. at Ex. 1, ¶ 12 and Attachment 3, BOP00344 and BOP00346.

5.   On December 15, 2008, the Warden approved the plaintiff's referral to the SMU Program.  Id. at Ex. 1, ¶ 13 and Attachment 3, BOP00345.

---

[3]The plaintiff disagrees with many of the defendants' factual statements, but he does not provide competent evidence to create a material fact dispute.  In addition, the plaintiff's statements of undisputed material facts are either unsupported or nonmaterial.  I do not consider statements of fact that not material or are not supported by competent evidence.  See Fed.R.Civ.P. 56(e)(2).

6. On January 6, 2009, the Regional Director for the Western Region determined that sufficient evidence existed to warrant an SMU referral hearing. Id. at Ex. 1, ¶ 14 and Attachment 3, BOP00334.

7. After the SMU referral hearing on January 14, 2009, a Discipline Hearing Administrator ("DHA") found that the plaintiff met the criteria for designation to an SMU because he (1) has a history of serious and disruptive disciplinary infractions, and (2) has otherwise participated or was associated with activity such that greater management of the inmate's interaction with other persons was necessary to ensure the safety, security, or orderly operation of BOP facilities, or protection of the public. Id. at Ex. 1, ¶ 15 and Attachment 4, BOP00018. The DHA based his findings on the following: (1) the plaintiff and another inmate were in an altercation during which the plaintiff was armed with a sharpened weapon, the other inmate received multiple stab wounds, and when staff ordered him to stop his actions, the plaintiff swung the weapon at a staff member; (2) the plaintiff's total discipline record included three DHO findings of possession of a weapon, one DHO finding of fighting, and one DHO finding of assault on a staff member; and (3) staff reported that the plaintiff demonstrated a need for a more restrictive environment. Id. at Ex. 1, ¶ 15 and; Attachment 4, BOP00019.

8. The Regional Director reviewed the DHA's written findings and recommended that the plaintiff be designated to an SMU. Id. at Ex. 1, ¶ 16 and Attachment 4, BOP00020.

9. The Designation and Sentence Computation Center and the Assistant Director, Correctional Programs Division, Central Office, reviewed FCC Tucson's SMU referral packet, the DHA's written findings, and the Regional Director's recommendation, and approved the plaintiff's designation to an SMU. Id. at Ex. 1, ¶ 17 and Attachment 4, BOP00020.

10.   The plaintiff was designated to the SMU Program at the Federal Correctional Institution in Talladega, Alabama ("FCI Talladega"), from March 23, 2009, to April 25, 2011, when he was transferred to the United Statements Penitentiary-Administrative Maximum in Florence, Colorado ("ADX").  Id. at Ex. 1, ¶ 18 and Attachment 2, p. 1.

11.   The plaintiff exhausted his administrative remedies for Claim One by filing tort claim number TRT-SR-2011-01338 with the BOP.  *Complaint*, ¶ 20; *Recommendation of United States Magistrate Judge* [Doc. #47], p. 12.  The tort claim states that "I have been held in extended isolation for no justifiable reason for more than two years.  This has caused mental, emotional and physical deterioration.  Constitutes torture under international law." *Defendants' Motion*, Ex. 3; *Recommendation of United States Magistrate Judge* [Doc. #47], p. 12.

**B.   Claim Three**

12.   The plaintiff's FOIA Request No. 2010-04477 was received in the BOP's Freedom of Information Act/Privacy Act ("FOIA/PA") Office on February 4, 2010.  The plaintiff sought documents or policy regarding "the Southeast Regional Office takeover of the [SMU] at Talladega, Alabama."[4] *Defendants' Motion*, Ex. 7, ¶ 33 and Attachment 12.

13.   A search of records at FCI Talladega was reasonably calculated to locate records responsive to this portion of the request.  Id. at Ex. 7, ¶ 34.  However, no records were located because there was no "takeover" of the SMU.  Id.

---

[4]The plaintiff also sought additional records regarding complaints filed by the Union President and complaints filed by staff concerning the SMU, id. at Ex. 7, ¶ 33 and Attachment 12, but the plaintiff does not challenge the BOP's processing of those records.  *Complaint*, pp. 7-9.

14.   On February 24, 2010, the BOP issued a response to the plaintiff regarding FOIA Request Number 2010-04477.  Id. at Ex. 7, ¶ 36 and Attachment 13.  Although no records were located regarding the plaintiff's request for records regarding the alleged takeover of the FCI Talladega SMU, he was provided with a copy of the national program statement on SMUs, Program Statement 5217.01, *Special Management Units*.  Id. at Ex. 7, ¶ 36 and Attachment 13.

15.   On or about August 31, 2010, FOIA Request Number 2010-11668 was received in the BOP's FOIA/PA Office.  Id. at Ex. 6, ¶ 27 and  Attachment 14.  The plaintiff sought contracts involving health care and/or mental health care to federal prisoners, food services for federal prisoners, the provision of commissary items and/or services to federal prisoners, and the provision of telephone and/or internet services to federal prisoners.  Id. at Ex. 6, ¶ 27 and Attachment 14.

16.   The BOP's Administration Division, located in the Central Office, provides the resources and support necessary for the BOP to perform in an effective and efficient manner including the development of budget requests, the stewardship of financial resources, and procurement.  Therefore, a search of the Administration Division's records was reasonably calculated to locate records responsive to Plaintiff's request.  Id. at Ex. 6, ¶ 28.

17.   The FOIA Processor asked Administration Division staff to conduct a search, and she was advised that based on a preliminary search for records, it was estimated that the search would involve the duplication of 11,250 pages.  Id.  As a result of the anticipated fee, on October 7, 2010, a fee letter was sent to the plaintiff indicating a fee estimate of $1,115.00 (11,250 pages less 100 free pages, at 10 cents per page) pursuant to 28 C.F.R. § 16.11(c)(2) and (d)(3).  The plaintiff was advised that pursuant to 28 C.F.R. § 16.11(i)(2), advance payment was required.

The plaintiff was also advised that rather than pay the fee, he could narrow the scope of his request to reduce his costs. Id. at Ex. 6, ¶ 29 and Attachment 15.

18.   In a letter dated October 13, 2010, the plaintiff advised that he wished to narrow the scope of his FOIA request. In the narrowed request, the plaintiff sought contracts with any private companies to provide telephone and/or internet services to federal inmates. The plaintiff specifically stated that all other requests under FOIA Number 2010-11668 were withdrawn. Id. at Ex. 6, ¶ 30 and Attachment 16.

19.   Based on previous requests for contracts with any private companies to provide telephone and/or internet services to federal inmates, the FOIA Processor knew the BOP did not maintain such contracts; rather, the requester for any such FOIA request must file their FOIA request with the U.S. Department of the Treasury. Id. at Ex. 6, ¶ 31. Therefore, on or about November 23, 2010, the BOP advised the plaintiff that the contracts he requested were administered by the U.S. Department of the Treasury and suggested he contact the U.S. Department of the Treasury for responsive records. Id. at Ex. 6, ¶ 31 and Attachment 17.

20.   After contacting the Department of the Treasury, the plaintiff resubmitted his request for copies of contracts for telephone and e-mail services being provided to federal inmates to the BOP. This second request was assigned FOIA Request Number 2011-03182. The plaintiff included a copy of the letter from the Department of the Treasury advising him that it had no records responsive to his request. Id. at Ex. 6, ¶ 32 and Attachment 18. FOIA Request Number 2011-03182 was subsequently closed on January 25, 2011, as it was duplicative of FOIA Request Number 2010-11668. Id. at Ex. 6, ¶ 32.

21.   Meanwhile, the plaintiff continued to work with the Department of the Treasury on his request.  On January 31, 2011, he was advised that his request was being forwarded to the General Services Administration ("GSA").  Id. at Ex. 6, ¶ 33 and Attachment 19.  After researching the issue, the GSA determined that the BOP had awarded the contract the plaintiff sought to Unisys Corp.  The GSA forwarded the plaintiff's request back to the BOP.  Id. at Ex. 6, ¶ 34 and Attachment 21.

22.   The FOIA Processor consulted with staff in the Administration Division and was advised that there were two types of contracts potentially responsive to the plaintiff's request: a contract for the infrastructure supporting the telephone and data lines would be administered by GSA, whereas contracts for the software applications to operate the telephone and email services would be administered by the Justice Management Division of the U.S. Department of Justice.  Id. at Ex. 6, ¶ 35.  In a letter dated March 8, 2011, the plaintiff was advised of the same and specifically advised that if he seeks copies of the contract for the provision of data and telephone circuits ("Network Enterprise Contract"), he should submit his request to GSA, but if he seeks copies of the Information Technology Support Services ("ITSS-3") contract, he can submit his FOIA request to the Justice Management Division.  Id. at Ex. 6, ¶ 35 and Attachment 22.

23.   The plaintiff appealed the BOP's response to OIP, which in turn asked BOP to conduct a new search for responsive records in the BOP's Trust Fund Office.  On January 10, 2012, staff searched the BOP's Trust Fund Office for copies of the contracts for telephone and e-mail services being provided to federal inmates, but did not locate any responsive records.  Id. at Ex. 6, ¶ 36.  This negative search result was communicated to OIP, which subsequently

affirmed the BOP's adequacy of search for records.  Id. at Ex. 6, ¶ 36 and Attachment 23.


24.   FOIA Request No. 2011-03653 was received on January 6, 2010.  The plaintiff

requested a copy of the annual operation statement for fiscal year 2008, the most recent audit of

the inmate trust fund, and transactions from the trust fund account to the general fund account.

Id. at Ex. 7, ¶ 28 and Attachment 8.

25.   Although the plaintiff's request did not identify the institution for which he sought

the information, the FOIA Processor interpreted his request as seeking records from FCI

Talladega, the plaintiff's institution of confinement at the time.  Because the plaintiff's request

sought financial information, the FOIA Processor determined that a search of the records

maintained by the Business Administrator of FCI Talladega was reasonably calculated to locate

records responsive to Plaintiff's request.  The FOIA Processor was advised that it would take

approximately two weeks to complete the search for responsive records.  Id. at Ex. 7, ¶ 29.

26.   On February 17, 2010, the plaintiff appealed the BOP's lack of response to this

FOIA Request.  Id. at Ex. 7, ¶ 30 and Attachment 9.

27.   On February 27, 2010, the BOP issued a letter to the plaintiff advising him of an

estimated search fee of $1,248.  The plaintiff was also advised to confirm his willingness to pay

the estimated fee, modify his request, or receive the first two hours of search for free.  Id. at Ex.

7, ¶ 31 and Attachment 10.

28.   On March 25, 2010, OIP denied his appeal as moot in light of the BOP's estimated

fee letter.  Id. at Ex. 7, ¶ 32 and Attachment 11.

### C.   Claim Four: Privacy Act

29.   The plaintiff challenges as unconstitutional the exemptions asserted by the United

States Marshal Service ("USMS") and the Federal Bureau of Investigation ("FBI") in their

letters denying the plaintiff's requests to amend their records.  *Complaint*, pp. 9-11; *Defendants'*

*Motion*, p. 22, ¶ 174.[5]

30.   The USMS and the FBI investigated the plaintiff in 2006 after they received

information that the plaintiff and another inmate were conspiring against the family of a judge on

the Fifth Circuit Court of Appeals.  *Defendants' Motion*, Ex. 8, ¶ 4; Ex. 9, ¶ 2.

### 1.   USMS Documents

31.   The USMS compiled its records regarding the alleged plot against the judge's

family for the purposes of determining the implementation of protective measures and

investigating

the alleged crime.  Id. at Ex. 9, ¶ 2.

32.   The USMS's records regarding that investigation are contained in FID: 571275,

Case No. 0779-0518-3361-T.  Id. at Ex. 9, ¶ 3.  The file FID: 571275, Case No.

0779-0518-3361-T is contained in USMS's Service Inappropriate Communications/Threat

Analysis Information System (IC/TIS) (JUSTICE/USM- 009), 72 Fed. Reg. 33515 (June 18,

2007).  Id. at Ex. 9, ¶ 4.  The investigation is also mentioned in the U.S. Marshal's Warrant

---

[5]The plaintiff states that he "disputes that defendants [sic] exemptions mentioned in
USMS and FBI records are the only unconstitutional exemptions."  *Plaintiff's Response*, p. 9, ¶
174.  However, he does not identify with clarity any other exemption(s) he is challenging in
Claim Four.  Moreover, there is no evidence in the record that the BOP asserted an exemption
under the Privacy Act with regard to the allegations of Claim Four. Therefore, I construe Claim
Four as challenging only those exemptions asserted by the USMS and the FBI in their letters
denying the plaintiff's requests to amend his records.

Information Network (JUSTICE/USM-007). 72 Fed. Reg. 9777 (March 5, 2007). Id. at Ex. 9, ¶ 5.

33.   The USMS closed its investigation into the alleged plot against the judge's family in November 2006 after concluding that the alleged plot was false. Id. at Ex. 9, ¶ 6. This conclusion is noted in its files pertaining to the plaintiff. Id. at Ex. 9, ¶ 7.

34.   The plaintiff sent the USMS a letter dated June 27, 2011, requesting that pursuant to the Privacy Act, 5 U.S.C. § 552a(d)(2), it remove from its records "[t]he false information that [he] threaten[ed]" a circuit judge. Id. at Ex. 9, ¶ 8 and Attachment A.

35.   On August 3, 2011, the USMS responded that, pursuant to 5 U.S.C. § 552a(j)(2), its records regarding the alleged threat against the judge are exempt from section 552a(d)(2). Id. at Ex. 9, ¶ 9 and Attachment B.

36.   The plaintiff appealed the USMS's response to the U.S. Department of Justice Office of Privacy and Civil Liberties ("OPCL"). Id. at Ex. 9, ¶ 10 and Attachment C.

37.   On February 16, 2012, the OPCL affirmed the USMS's decision, finding that the USMS records Plaintiff sought to have expunged or amended were compiled for the purpose of a criminal investigation and, therefore, exempt from the Privacy Act's amendment provisions because of 5 U.S.C. § 552a(j)(2). Id. at Ex. 9, ¶ 11 and Attachment D. The letter also informed the plaintiff that he could, "[p]ursuant to 28 C.F.R. § 16.46(d) . . . send a Statement of Disagreement to the USMS that will be included in the USMS file in which the disputed records are maintained for the benefit of any future reader." Id. at Ex. 9, ¶ 12 and Attachment D. The plaintiff did not send the USMS a Statement of Disagreement. Id. at Ex. 9, ¶ 13.

## 2.   FBI Documents

39.   The FBI compiled its records regarding the alleged plot against the judge's family for the purpose of investigating that alleged crime.  Id. at Ex. 8, ¶¶ 4, 14.

40. The FBI's records regarding that investigation are contained in FBI File No. 89-F-110-66130, which is contained in the FBI's Central Record System, JUSTICE/FBI-002. Id. at Ex. 8, ¶ 14.

41.   Ultimately, the FBI decided to close its investigation into the alleged plot against the judge's family unless additional facts developed in the future regarding the threats against the judge's family.  Id. at Ex. 8, ¶ 4.  This conclusion is noted in its file.  Id. at Ex. 11, Attachment 2.

42.   The plaintiff sent a letter dated October 4, 2010, to the FBI requesting that it remove or correct information in its records "[t]hat I threaten[ed]" a judge.  Id. at Ex. 8, ¶ 5 and Attachment 2.

43.   On May 14, 2011, the FBI responded that its records regarding the alleged threat against the judge were not subject to the Privacy Act's amendment provisions because of 5 U.S.C. § 552a(j)(2).  Id. at Ex. 8, ¶ 6 and Attachment 3.

44.  The plaintiff appealed that decision.  Id. at Ex. 8, ¶ 7 and Attachment 4.  On October 6, 2011, the OPCL affirmed the FBI's decision, finding that the FBI records the plaintiff sought to have expunged or amended were compiled for the purpose of a criminal investigation and were, therefore, exempt from the Privacy Act's amendment provisions under 5 U.S.C. § 552a(j)(2).  The letter also informed the plaintiff that he could, "[p]ursuant to 28 C.F.R. § 16.46(d) . . . send a Statement of Disagreement to the FBI that will be included in the FBI file in which the disputed records are maintained for the benefit of any future reader."  Id. at Ex. 8, ¶ 10

and Attachment 7.  The plaintiff did not send the FBI a Statement of Disagreement.  Id. at Ex. 8,

¶ 11.

### 3.  BOP Documents

45.   The plaintiff filed administrative remedies with the BOP (designated as

Administrative Remedy Series 647609) requesting that the BOP stop spreading the allegedly

false information contained in USMS report case number 0779-0518-3361-T, as well as any

related documents that contain the false information that he threatened a judge.  The plaintiff

also asked the BOP to remove those records from its files.  Id. at Ex. 1, ¶ 19 and Attachment 5.

46.   The USMS report, which the plaintiff attached to his administrative remedy, stated

that "FBI and USMS came to the conclusion that the allege[d] plot to XXXX Judge XXXX is

false and no further evidence of an effort to carry out the plot exist[s]."  Id. at Ex. 1, ¶ 20 and

Attachment 5, at BOP00903 (capitalization standardized, pre-existing redactions indicated by

"XXXX.").  The plaintiff was incarcerated at the United States Penitentiary in Beaumont, Texas

(USP Beaumont), at that time.  Id. at Ex. 1, ¶ 21 and Attachment 2 at p. 1.

47.   Because the plaintiff was incarcerated at the time the allegations were made, and

assuming the BOP was involved in the reporting or investigation of the allegations, any

documents regarding the allegations would be maintained in two possible BOP systems of

records ("SOR"): (1) JUSTICE/BOP-001, "Prison Security and Intelligence Record System"

(SOR BOP-001); and (2) JUSTICE/BOP-005, "Inmate Central Records Systems" (SOR

BOP-005).  Id. at Ex. 1, ¶ 22 and Attachments 6 and 7.

48.   SOR BOP-001 records are maintained by the Special Investigative Services ("SIS")

Department.  Id. at Ex. 1, ¶ 23.

49.   Records in SOR BOP-005 are "records relating to the care, classification, subsistence, protection, discipline, and programs of federal inmates."  Id. at Ex. 1, ¶ 24 and Attachment 7 at 31371.  Specifically, this SOR includes "prison conduct records, including information concerning disciplinary actions, participation in escapes, assaults, and disturbances" and "investigatory information."  Id. at Ex. 1, ¶ 24 and Attachment 7 at 31371-72.  SOR BOP-005 is also known as an inmate's Central File.  Id. at Ex. 1, ¶ 24.

50.   USP Beaumont Special Investigative Services ("SIS") staff were asked to conduct a search of its records for potential documents regarding the allegations investigated by the USMS and FBI and determined to be false.  Id. at Ex. 1, ¶ 25; Ex. 10, ¶ 3.  USP Beaumont SIS staff did not locate any reference to these allegations in the records of the SIS Department.  Id. at Ex. 10, ¶ 3.

51.   Assuming USP Beaumont was involved in the reporting or investigation of the allegations, the documents would be maintained in the SIS Department's criminal investigation files, which have a four-year retention period.  Therefore, if the investigation began in 2006 and ended in 2007, any records would have been destroyed in 2011.  Id. at Ex. 10, ¶ 4.

52.   The plaintiff's Central File was searched for potential documents regarding the allegations investigated by the USMS and FBI and determined to be false.  No reference to these allegations was located in Plaintiff's Central File.  Id. at Ex. 1, ¶ 26.

# IV.  ANALYSIS

## A.  Claim One

### 1.  Federal Tort Claim

The claim made by the plaintiff in tort claim number TRT-SR-2011-01338 (the "Tort Claim") states "I have been held in extended isolation for no justifiable reason for more than two years.  This has caused mental, emotional and physical deterioration.  Constitutes torture under international law."  *Def. Motion*, Ex. 3.  In his Complaint, the plaintiff states that he is bringing a tort claim "for being forced into unwarranted psychological treatment in the illegal/void [SMU program] for two years."  *Complaint*, p. 3, ¶ 1.

The defendants argue that the Tort Claim is not the claim the plaintiff is making now because the Tort Claim "does not mention unwarranted psychological treatment."  *Defendants' Motion*, pp. 28-29.  The plaintiff argues the defendants' definition of "psychological treatment" is too narrow because every aspect of the program is geared toward altering the inmates' behavior and is, thus, psychological treatment.  *Plaintiff's Response to Defendants' Motion for Summary . . . Judgment* [Doc. #82] ("Plaintiff's Response"), p. 4, ¶¶ 14, 17.

I agree with the plaintiff.  Both Claim One and the Tort Claim are based on the plaintiff's placement in the SMU program.  The Motion should be denied insofar as it seeks dismissal of Claim One's tort allegations on this basis.

The defendants further argue that the plaintiff's Tort Claim is subject to the discretionary function exception and is, therefore, barred by sovereign immunity.  It is well-settled that "the United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."

16

Lehman v. Nakshian, 453 U.S. 156, 160 (1981) (internal quotations and citations omitted).  The

FTCA provides a limited waiver of the sovereign immunity for certain torts.  See 28 U.S.C. §§

1346(b), 2401(b), 2671-2680.  Specifically:

> Under the FTCA, the United States waives its sovereign immunity
> with respect to certain injuries caused by government employees
> acting within the scope of their employment.  The FTCA contains
> an exception to this broad waiver of immunity, however, for
> claims based upon the exercise or performance or the failure to
> exercise or perform a discretionary function or duty on the part of
> a federal agency or an employee of the Government, whether or
> not the discretion involved be abused.  The discretionary function
> exception marks the boundary between Congress' willingness to
> impose tort liability upon the United States and its desire to protect
> certain governmental activities from exposure to suit by private
> individuals.  If the discretionary function exception applies to the
> challenged governmental conduct, the United States retains its
> sovereign immunity, and the district court lacks subject matter
> jurisdiction to hear the suit.
>
> In dozens of cases in the last decade, this court has determined
> whether government conduct was within the exception by using a
> two-branch analysis announced in Berkovitz ex rel. Berkovitz v.
> United States, 486 U.S. 531, 536-37, 108 S.Ct. 1954, 100 L.Ed.2d
> 531 (1988).  This court has summarized the analysis as follows:
> First, we determine whether the governmental conduct at issue is a
> matter of choice for the acting employee.  Conduct cannot be
> discretionary unless it involves an element of judgment or choice.
> Thus, the discretionary function exception will not apply when a
> federal statute, regulation, or policy specifically prescribes a
> course of action for an employee to follow.  In such a situation, the
> employee has no rightful option but to adhere to the directive.
>
> If the conduct at issue involves an element of judgment or choice,
> Berkovitz requires us to determine whether that judgment is of the
> kind that the discretionary function exception was designed to
> shield.  Congress preserved governmental immunity for
> discretionary functions to prevent judicial second-guessing of
> legislative and administrative decisions grounded in social,
> economic, and political policy through the medium of an action in
> tort.  Therefore, the exception protects only governmental actions
> and decisions based on considerations of public policy.  This court

> has also noted the Supreme Court's modification of <u>Berkovitz 's</u>
> second branch: Only decisions that are susceptible to policy
> analysis are protected by the exception.

<u>Franklin Sav. Corp. v. U.S.</u>, 180 F.3d 1124, 1130 (10th Cir. 1999) (internal quotations and

citations omitted).

Here, the plaintiff was transferred to the SMU pursuant to the Special Management Units

Program Statement 5217.01, which provides that "[d]esignation to a SMU *may* be considered for

any sentenced inmate whose interaction requires greater management to ensure the safety,

security, or orderly operation of the Bureau facilities, or protection of the public, because the

inmate meets" any of the listed criteria. *Motion*, Ex. 1, p. 2, § 2 (emphasis added). The Program

Statement further provides that "[i]f an inmate appears to satisfy any of the referral criteria

above, the Unit Team *may* present a redesignation referral to the Warden." <u>Id.</u> at § 3 (emphasis

added). Thus, placement in an SMU is not mandated by BOP policy; it is at the discretion of

prison officials. Moreover, the decision is based on considerations of public policy involving

security, safety, and management concerns. <u>Id.</u> at § 1. Therefore, the plaintiff's placement in the

SMU is protected by the discretionary function exception, and the court does not have

jurisdiction over it. <u>See</u> <u>Salah v. United States</u>, No. 09-cv-2563-PAB-KLM, 2011 WL 2682728,

*2-3 (D. Colo. July 8, 2011) (FTCA claim regarding placement of inmate in specific unit in

ADX satisfied both prongs of discretionary function exception). The Motion should be granted

insofar as it seeks dismissal of the tort claim asserted in Claim One.

### 2. Violation of the APA

Claim One also alleges that "SMUs were knowingly implemented in violation of the

APA." *Complaint*, p. 4, ¶ 4. Although the APA provides for judicial review of agency actions

under 5 U.S.C. § 702, section 701(a) provides an exception to the APA's entitlement to judicial

relief where "statutes preclude judicial review."  5 U.S.C. § 701(a)(1).

Under 18 U.S.C. § 3621, the BOP may designate the place of an inmate's imprisonment

considering factors including: "(1) the resources of the facility contemplated; (2) the nature and

circumstances of the offense; [and] (3) the history and characteristics of the prisoner."  Under 18

U.S.C. § 3625, designation decisions governed by section 3621are exempt from challenge under

the APA.  BOP Program Statement 5217.01, *Special Management Units*, is a policy statement

regarding designation of the place of an inmate's imprisonment.  Therefore, it may not be

challenged under the APA.  Terrell v. Rupert, No. 7:11-CV-00024, 2011 WL 6046618 at *5

(W.D. Va. Dec. 5, 2011) (dismissing pursuant to section 3625 the plaintiff's claim that BOP

Program Statement 5217.01, *Special Management Units*, was promulgated in violation of the

APA because it was implemented without an opportunity for notice and comment).  See also

Jordan v. Wiley, 411 Fed.Appx. 201, 214 (10th Cir. 2011) (holding that federal court cannot

review prison disciplinary decisions pursuant to the APA);  Redmon v. Wiley, 349 Fed.Appx.

251, 256 (10th Cir. 2009) (noting that APA barred review of BOP decision determining inmate's

eligibility in prison program governed by section 3621); McMillan v. Wiley 813 F. Supp.2d

1238, 1256, 1263 (D. Colo. 2011) (district court lacked jurisdiction under APA to review BOP

decision denying inmate placement in Step-Down Unit Program at ADX).[6]

---

[6]Although the defendants do not make this argument, I may address it because it
implicates the court's subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court
determines at any time that it lacks subject-matter jurisdiction, the court shall dismiss the
action."); Merida Delgado v. Gonzales, 428 F.3d 916, 919 (10th Cir. 2005) (district court does
not have jurisdiction over claim where 5 U.S.C. § 701(a)'s exception to the APA's limited
waiver of sovereign immunity applies).

### B.   Claim Three: Alleged FOIA Violations

Claim Three alleges that the BOP violated FOIA when it wrongfully denied 12 of the

plaintiff's requests for information.  *Complaint*, p. 7.  The plaintiff states that the "[d]efendants

have recently produced some of the records" he requested, and "as such, plaintiff will only

address the records that have not been released."  *Response*, p. 7, § C.  The plaintiff then

addresses FOIA Requests Nos. 2010-04477; 2010-11668; and 2010-03653.  Id. at pp. 8-9.

Therefore, to the extent the Complaint contains claims for violations of FOIA based on other

requests, these claims are deemed abandoned.  Poole v. Southwestern Bell Telephone L.P., 86

Fed.Appx. 372, 374 (10th Cir. 2003) (deeming claims abandoned in the district court because the

plaintiff did not oppose defendant's argument to dismiss them in response to motion to dismiss).

I construe the Complaint to assert only a claim for violations of FOIA based on Requests Nos.

2012-04477; 2010-11668; and 2010-03653.

It is the FOIA defendant's burden to show that its search for responsive documents was

reasonable.  Patterson v. Internal Revenue Service, 56 F.3d 832, 841 (7th Cir. 1995).  "In

discharging this burden [to show the adequacy of its search], the agency may rely on affidavits or

declarations that provide reasonable detail of the scope of the search.  In the absence of

countervailing evidence or apparent inconsistency of proof, such affidavits will suffice to

demonstrate compliance with the obligations imposed by the FOIA."  Trentadue v. F.B.I., 572

F.3d 794, 807 (10th Cir. 2009) (quoting Rugiero v. U.S. Dep't of Justice, 257 F.3d 534, 547 (6th

Cir.2001)).  In particular:

> [T]he focal point of the judicial inquiry is the agency's search
> process, not the outcome of its search.  The issue is not whether
> any further documents might conceivably exist but rather whether
> the government's search for responsive documents was adequate,

which is determined under a standard of reasonableness, and is dependent upon the circumstances of the case.  The reasonableness of an agency's search turns on the likelihood that it will yield the sought-after information, the existence of readily available alternatives, and the burden of employing those alternatives.

Trentadue, 572 F.3d at 797-98 (internal citations and quotations omitted).

### 1.  Request No. 2010-04477

In Request No. 2010-04477, the plaintiff sought information regarding (1) "a copy of any and all documents, memorandums, policy(s) and/or otherwise concerning the Southeast Regional Office takeover of the [SMU] at Talladega, Alabama;" (2) complaints filed by the Union President; and (3) complaints filed by staff about the SMU.  *Defendants' Motion*, Ex. 7, ¶ 33 and Attachment 12.  Claim Three addresses only the information regarding the Southeast Regional Office's takeover of the SMU.  *Complaint*, pp. 7-9 (in particular, ¶ 37).

The defendants state that the BOP performed a search of records at FCI Talladega but no records were located because there was no "takeover" of the SMU.  *Defendants' Motion*, Ex. 7, ¶ 34.  The plaintiff states he "disputes that there was no task force nor takeover of the SMU Talladega." *Plaintiff's Response*, p. 8.  He cites to his Exhibit 6, which is titled "Schedule of Cost Input for Modernization and Repair of Existing Facilities" (the "Schedule").  The Schedule addresses the cost for a project titled "Emergency Security Up-Grade for SMU" at FCI Talladega.  The plaintiff cites to a sentence that states "[r]egional staff have been employed to oversee the administration of the SMU unit." The defendants argue that "oversee" is not the same as "takeover," and that the BOP's search for a "takeover" event was reasonable in light of

the wording of the plaintiff's request.[7] *Reply in Support of Motion for Summary Judgment* [Doc. #90] (the "Reply"), p. 12.  I agree.

Reasonableness does not require an agency to search every record system or produce all relevant material.  The agency must instead show "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  Oglesby v. United States Dept. of Army, 920 F.2d 57, 6 (D.C.Cir.1990).

It is undisputed that the plaintiff requested records regarding "the Southeast Regional Office takeover of the [SMU] at Talladega, Alabama"; the BOP searched records at FCI Talladega; and no records were located because there was no "takeover" of the SMU.  The BOP's response was reasonably calculated to uncover the documents requested by the plaintiff. The Defendants' Motion should be granted insofar as it seeks summary judgment on this claim.

## 2.   Request No. 2010-11668

In Request No. 2010-11668, the plaintiff initially sought numerous documents.  He ultimately withdrew all of his requests except for "[c]ontracts with any private companies to provide telephone and/or internet services to federal prisoners."  *Defendants' Motion*, Ex. 6, ¶ 30 and Attachment 16.  The BOP referred the plaintiff to the U.S. Department of Treasury, which referred him to the GSA, which referred him back to the BOP.  A BOP FOIA Processor ultimately contacted the Administration Division of the BOP for assistance in responding to the

---

[7]The defendants also argue that the plaintiff did not exhaust his administrative remedies because he did not appeal to the OIP the BOP's response regarding the alleged takeover. *Defendants' Motion*, p. 51.  However, the plaintiff provides evidence to create a material fact dispute regarding exhaustion.  *Plaintiff's Response*, p. 15 and Ex. 10.  Therefore, I address the merits of this claim.

request.  The Administration Division advised the processor that there were two types of

contracts potentially responsive to the request for e-mail and telephone contracts: (1) a contract

for the infrastructure supporting the telephone and data lines which would be administered by

GSA, and (2) a contract for the software application to operate

the telephone and e-mail services which would be administered by the Justice Management

Division of the U.S. Department of Justice.  The plaintiff was advised that he could submit his

request to either the GSA or the Justice Management Division, depending on which contract he

sought.

Plaintiff appealed to OIP, which asked the BOP to conduct another search for responsive

records.  The Trust Fund Office was then searched as it is primarily responsible for overseeing

the inmate telephone and email systems in BOP facilities, but this search did not yield any

results.  The OIP then affirmed the BOP's processing of Plaintiff's FOIA request.

The plaintiff argues that "[t]he BOP admitted that it awarded the telephone contract to

Unisys Corp. see defendants' facts number 116.  BOP can not admit to awarding the contract

then claim it is not a BOP record."  *Plaintiff's Response*, pp. 15-16.  However, the defendants'

statement of fact number 116 states that "the **GSA determined** that the BOP had awarded the

contract . . .  to Unisys Corp."  *Defendants' Motion*, p. 16, ¶ 116 (emphasis added).  There is no

evidence in the record that the BOP admitted to awarding the contract.

The plaintiff also argues that he "submitted requests to every agency the BOP claimed

administered the contract" and "[e]very agency stated that the contract was BOP records."

*Plaintiff's Response*, p. 16.  The plaintiff cites to his Exhibit 8 in support of this argument.

Exhibit 8 contains a letter from the Justice Management Division which states that "the Federal

Bureau of Prisons also has a contracting office and may be of some assistance to you in responding to your request."  Exhibit 8 also contains a letter from the Federal Communications Commission which states that "[t]he records that you seek may be in the possession of the General Services Administration (GSA)."  Exhibit 8 does not contain any evidence that other agencies stated that the contract was a BOP record.

Finally, the plaintiff states that the "BOP found the contract in its Administration Division but refused to release it."  The plaintiff does not provide any evidence to support this statement.  Clinton D. Stroble, Assistant General Counsel for the Office of the General Counsel in the FOIA/PA Section, attests that the BOP FOIA Processor consulted with staff in the Administration Division and was advised that there were two types of contracts potentially responsive to the plaintiff's request: one which would be administered by the GSA and one which would be administered by the Justice Management Division of the U.S. Department of Justice. *Defendants' Motion*, Ex. 6, ¶ 35.  Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."  Trentadue, 572 F.3d at 808 (quoting SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C.Cir. 1991)).

The BOP's search efforts regarding this request were reasonable.  The Defendants' Motion should be granted insofar as it seeks summary judgment on this claim.

### 3.   Request No. 2010-03653

The Complaint alleges that the plaintiff "requested [a] copy of Inmate Trust Fund Audit on December 19, 2009.  Request assigned no. 10-3653.  The request was denied without reason and plaintiff appealed on February 17, 2010, and September 3, 2011." *Complaint*, p. 8, ¶ 40.

The plaintiff submitted a FOIA/PA request dated December 19, 2009, requesting an Annual Operation Statement for the fiscal year 2008; a copy of the most recent audit of the inmate trust fund; and "transactions from trust fund account to general fund account." *Defendants' Motion*, Ex. 6, ¶ 28 and Attachment 8.  By letter dated February 24, 2010, the plaintiff was notified by Jeff Campbell, Supervising Attorney at the BOP's Southeast Regional Office, that the request would exceed the free search time of two hours and that the estimated search fee would cost $1,248.00.  The plaintiff was told that processing of the request would be suspended until he either confirmed his willingness to pay all of the fees or he modified his request.  Id. at ¶ 31 and Attachment 10.

The defendants provide evidence to show that the plaintiff did not respond to the letter. Id. at ¶ 32.  The plaintiff provides evidence to show that he did respond to the letter and cites to his Exhibit 9 as proof.  *Plaintiff's Response*, p. 9, ¶ 8; p. 16, ¶ 10; p. 23 (declaring under penalty of perjury that the Response's statements and exhibits are true and correct).  The plaintiff states that the BOP responded "and changed the request number to 2009-08132" and that he appealed under this new number.  Id. at p. 16, ¶ 10.

Exhibit 9 contains a copy of a letter from the plaintiff to Mr. Campbell dated March 4, 2010, regarding Request No. 10-03653. [Doc. #82, p. 64].  In the letter, the plaintiff withdraws his request "as to the individual transactions from the trust fund account to the general fund account" and requests that "the Statement of Operation 2008 and the audit documents be released without research costs."

The remaining documents under Exhibit 9 all reference FOIA Request No. 2009-08132 and consist of the following: (1) a letter dated September 13, 2000, from Paralegal Wilson

25

Moorer to the plaintiff responding to the plaintiff's FOIA request for a copy of the Statement of Operations for the Bureau of Prisons Trust Fund Branch; (2) a letter dated September 17, 2010, from the plaintiff to Mr. Moorer stating that the "Statement of Operations did not include the income from the telephone as in previous statements" and Mr. Moorer's response did not address the plaintiff's request for a copy of the latest audit of the inmate trust fund; (3) an appeal by the plaintiff to the U.S. Department of Justice dated September 3, 2011, regarding the denial of his request for an audit of the inmate trust fund; (4) a letter from a Supervisory Administrative Specialist with the U.S. Department of Justice dated September 21, 2011, acknowledging receipt of the plaintiff's letter dated September 3, 2011; and (5) a letter from the plaintiff to the Caroline Smith of the U.S. Department of Justice dated November 14, 2011, stating that her letter dated November 8, 2011, contained false statements and the wrong request number.

Although my review of the record as a whole casts considerable doubt on the veracity of the plaintiff's allegations, given the procedural posture of this case, the plaintiff has provided evidence to create a material fact dispute regarding whether he failed to respond to the defendants' fee letter. Accordingly, the Defendants' Motion should be denied to the extent it seeks dismissal of Claim Three's allegations regarding FOIA Request No. 2010-03653, and the BOP should be directed to process the plaintiff's request for a copy of the latest audit of the inmate trust fund. See Reyes v. United States Customs Service, No. Civ.A. 05-173 CKK, 2005 WL 3274563 (D.D.C. July 28, 2005).

## C.   Claim Four: Privacy Act

Claim Four contains the following allegations against the defendants: DOJ employees knowingly started a false rumor that the plaintiff threatened a judge of the Fifth Circuit Court of

Appeals.  *Complaint*, ¶ 47.  DOJ employees disseminated this rumor to Judge King and others "in a malicious, defamatory, libel and slanderous manner to cause prejudice against the plaintiff."  Id. at ¶ 48.  The false information caused the judge and others to "disregard and violate clear law."  Id. at ¶ 49.  The judge "denied plaintiff relief of the Supreme Court's summary reversal of the case in contradiction of clearly established law."  Id. at ¶ 50.  The DOJ falsely claims that the records were created based on a book written by the plaintiff "which DOJ employees stole and refused to return."  Id. at ¶ 55.  The DOJ has "refused to expunge and/or correct this knowingly false information."  Id. at ¶ 60.  "[T]he DOJ is still in violation of section (e)(7) for maintain[ing] records in regard to the manner plaintiff exercises his first amendment right."  Id. at ¶ 57.

The court has dismissed the state law tort claims in Claim Four; all claims against the BOP, DOJ, and USA for constitutional deprivations; and all constitutional claims against the Doe defendants.  *Recommendation of United States Judge* [Doc. #47] pp. 13-15, 16-17, 20-21; *Order Affirming and Adopting Recommendation of United State Magistrate Judge* [Doc. #51].

The remaining allegations in Claim Four are that the Privacy Act exemptions asserted by the United States Marshal Service and the Federal Bureau of Investigation  are void for vagueness because they encourage arbitrary application, and are unconstitutional as applied. *Complaint*, p. 9, ¶ 45; *Recommendation of United States Magistrate Judge*, p. 24.

The plaintiff requested, pursuant to 5 U.S.C. § 552a(d)(2), that the USMS and the FBI correct or remove information in their records regarding his alleged threat to a judge.  Section 552a(d) provides:

> (d) Access to records.--Each agency that maintains a system of records shall--

\* \* \*

(2) permit the individual to request amendment of a record pertaining to him and--

(A) not later than 10 days (excluding Saturdays, Sundays, and legal public holidays) after the date of receipt of such request, acknowledge in writing such receipt; and

(B) promptly, either--

(i) make any correction of any portion thereof which the individual believes is not accurate, relevant, timely, or complete; or

(ii) inform the individual of its refusal to amend the record in accordance with his request, the reason for the refusal, the procedures established by the agency for the individual to request a review of that refusal by the head of the agency or an officer designated by the head of the agency, and the name and business address of that official . . . .

The USMS and FBI responded that, pursuant to 5 U.S.C. § 552a(j)(2), its records

regarding the alleged threat are exempt from section 552a(d)(2).  Section 552a(j) provides:

(j) General exemptions.--The head of any agency may promulgate rules, in accordance with the requirements (including general notice) of sections 553(b)(1), (2), and (3), (c), and (e) of this title, to exempt any system of records within the agency from any part of this section except subsections (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7), (9), (10), and (11), and (i) if the system of records is--

(1) maintained by the Central Intelligence Agency; or

(2) maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status; (B)

28

information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

At the time rules are adopted under this subsection, the agency shall include in the statement required under section 553(c) of this title, the reasons why the system of records is to be exempted from a provision of this section.

A civil statute is void for vagueness only if it is "so vague and indefinite as really to be no rule or standard at all." Boutilier v. INS, 387 U.S. 118, 123 (1967). Here, section 552a(j)(2) sets forth specific requirements to exempt a system of records: (1) it applies only to the Central Intelligence Agency and agencies that principally function as criminal law enforcement agencies; (2) it applies only to information compiled primarily for criminal investigations or reports compiled at any stage of the enforcement of criminal laws; and (3) it applies only if the agency has promulgated rules exempting its system of records and providing reasons for that exemption. Section 552a(j)(2) sets forth specific criteria for an agency to exempt a system of records. Therefore, it does not "encourage arbitrary application," and it is not void for vagueness.

The plaintiff cites Pilon v. United States Dept. of Justice, 73 F.3d 1111 (D.C. Cir. 1996), for the proposition that the "defendants' exemptions have previously been judged unconstitutional" and an agency cannot exempt its records. *Plaintiff's Response*, p. 17; *Plaintiff's Motion*, pp. 13-14. Pilon addresses the unauthorized release of a protected agency record; it does not address a void for vagueness challenge to section 552a(j)(2).[8]

_____

[8]The plaintiff cites to numerous other cases that are not on point.

29

The plaintiff also claims that section 552a(j)(2) is unconstitutional as applied to him. However, he does not identify or discuss any specific constitutional provision that was allegedly violated.  He responds to the defendants' argument that his due process rights were not violated by stating that he "has a liberty interest in not being prosecuted under fabricated charges by defendants."  *Plaintiff's Response*, p. 17.  There is no evidence in the record that the plaintiff has been or is in danger of being prosecuted under fabricated charges, nor is there any competent evidence that the defendants fabricated evidence.[9]

The plaintiff has failed to set forth any competent evidence or argument to show that 5 U.S.C. § 552a(j)(2) is void for vagueness or is unconstitutional as applied.  The Defendants' Motion should be granted insofar as it seeks dismissal of Claim Four.

### D.  Plaintiff's Motion

The *Plaintiff's Motion* does not set forth any properly supported undisputed material facts.  Therefore, Plaintiff's Motion should be denied.

### V.  CONCLUSION

I respectfully RECOMMEND:

(1)  The defendants' Motion for Summary Judgment [Doc. #76] be GRANTED insofar as it seeks summary judgment in favor of the defendants and against the plaintiff on Claim One, Claim Four, and Claim Two's allegations regarding FOIA Request Nos. 2010-04477 and 2010-11668;

---

[9]The plaintiff also claims throughout his briefs that the defendants "disseminated the false information."  U.g., *Plaintiff's Response*, p. 10.  He does not provide any competent evidence to support this claim.  Moreover, his claim against the DOJ employees for disseminating false information has been dismissed.  *Recommendation of United States Judge* [Doc. #47], p. 21; *Order Affirming and Adopting Recommendation of United State Magistrate Judge* [Doc. #51].

(2)   The defendants' Motion for Summary Judgment [Doc. #76] be DENIED to the extent it seeks summary judgment in favor of the defendants on Claim Two's allegations regarding FOIA Request No. 2010-03653;

(3)   The defendants be ordered to process the plaintiff's request for a copy of the latest audit of the inmate trust fund as stated in FOIA Request No. 2010-03653; and

(4)   Plaintiff's Motion for Summary Judgment [Doc. #79] be DENIED.[10]

Dated September 24, 2013.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge

---

[10]Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

31